# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | **CRIMINAL NO. 14-67-1** |
| **v.** | : | |
| | : | |
| **SHERELLE PRATT,** | : | |
| **Defendant.** | : | |

## MEMORANDUM OPINION

**RUFE, J.**                                                      **July 13, 2015**

On December 8, 2014, following a jury trial, Defendant Sherelle Pratt was convicted of seven counts of the indictment: Counts Two and Three, filing a false tax return in violation of 26 U.S.C. § 7206(1); Counts Four through Seven, aiding and assisting in the preparation and filing of false tax returns in violation of 26 U.S.C. § 7206(2); and Count Eight, theft of government property in violation of 18 U.S.C. § 641. The jury acquitted Defendant on two counts of the Indictment: Count One, filing a false tax return in violation of 26 U.S.C. § 7206(1); and Count Nine, aggravated identity theft in violation of 18 U.S.C. § 1028A. Defendant now moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on Count Eight, and for a new trial pursuant to Rule 33 on Counts Two through Seven.

## I.       BACKGROUND

Defendant Sherelle Pratt prepared tax returns for her friends and neighbors from 2007 through 2009, and continued to do so after becoming an IRS contact representative in 2008.[1] On February 11, 2014, a grand jury in this District returned a nine-count indictment against the Defendant. Counts One through Three charged that Defendant had filed materially false tax returns in her own name in violation of 26 U.S.C. § 7206(1) because she failed to include money

---

[1] Trial Transcript ("Tr.") 12/5/14 at 10-12.

that she stole from those for whom she prepared tax returns as adjusted gross income. Count One charged that on or about February 18, 2008, Defendant filed a materially false return for tax year 2007 because she failed to report the money that she stole from the refunds of those for whom she prepared returns for tax year 2007. Count Two charged that on or about February 2, 2009, Defendant filed a materially false return for tax year 2008 because she failed to report the money that she stole from the tax refund and stimulus checks of those for whom she prepared returns for tax year 2007, including her neighbor Stacey Singleton and her acquaintances Stanley Trader and Brian Hamilton. Count Three charged that on or about August 17, 2011, Defendant filed a materially false return for tax year 2009 because she failed to report the money that she stole from the refunds of those for whom she prepared tax returns for tax year 2008, including her neighbor Ericka Blackwell, Ms. Blackwell's son Maurice Blackwell, Ms. Singleton, Mr. Trader, and Mr. Hamilton.

Counts Four through Seven charged that Defendant aided and abetted her neighbors and her son Marquice Pratt in the preparation and filing of materially false tax returns in violation of 26 U.S.C. § 7206(2). Count Four charged that Defendant aided and abetted Ms. Singleton in the preparation and filing of a return for tax year 2007 that claimed false child care expenses. Count Five charged that Defendant aided and abetted Ms. Singleton in the preparation and filing a return for tax year 2008 that also claimed false child care expenses. Count Six charged that Defendant aided and abetted Mr. Blackwell in the preparation and filing of a return for tax year 2008 that falsely claimed business expenses from a business that Mr. Blackwell did not own. Count Seven charged that Defendant aided and abetted her son in the preparation and filing of a tax return that falsely claimed two dependents.

Count Eight of the indictment charged that in violation of 18 U.S.C. § 641, on or about February 18, 2009, Defendant converted government property in the form of a $3,524 refund check intended for Ms. Blackwell. Count Nine charged that Defendant engaged in aggravated identity theft during and in relation to the theft of Ms. Blackwell's refund check in violation of 18 U.S.C. §§ 1028A(a)(1) and (c)(1). The jury acquitted Defendant on Counts One and Nine, and Defendant now moves for a judgment of acquittal on Count Eight and a new trial on Counts Two through Seven.

## II.      MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT EIGHT

Count Eight charged Defendant with theft of government property in the form of a $3,524 tax refund intended for Ericka Blackwell. In order to prove theft of the government property in violation of 18 U.S.C. § 641, the government was required to show: "1. receipt, possession, or concealment of, 2. stolen government property, with 3. intent to convert, and 4. knowledge that it is stolen."[2] Defendant makes two arguments: first, that acquittal on Count Nine, the charge of aggravated identity theft, was inconsistent with the conviction on Count Eight; and second, that the evidence is insufficient to support the conviction on Count Eight.

The crime of aggravated identity theft has four elements: (1) the defendant knowingly transferred, possessed or used; (2) without lawful authority; (3) a means of identification belonging to another person; and (4) the defendant knew that the means of identification that he/she knowingly transferred, possessed or used belonged to another person.[3] Because Count Nine required the government to prove separate conduct, namely that Defendant knowingly used a means of identification belonging to Ms. Blackwell without lawful authorization, the jury's verdict of acquittal on identity theft is not inconsistent with a conviction for theft of government

---

[2] *United States v. Trzcinski*, 553 F.2d 851, 854-55 (3d Cir. 1976).

[3] *See Flores-Figueroa v. United States*, 556 U.S. 646, 647 (2009).

3

property. Therefore, the sole issue is whether the evidence was sufficient to support the conviction for theft of government property.

At trial, the government offered into evidence Ms. Blackwell's 2008 tax return, which requested that the $3,524 refund be electronically deposited into Defendant's business bank account at T.D. Bank (the "Business Account").[4] Ms. Blackwell testified that she had not authorized Defendant to file the return, did not recognize the Business Account, and had not received any of the $3,524 refund from Defendant.[5] Ms. Blackwell's testimony was partially contradicted by her son Maurice Blackwell, who testified that Defendant had visited the Blackwell home and started to prepare the 2008 returns for Mr. Blackwell and his mother in their presence.[6]

The government also pointed to circumstantial evidence indicating that the purpose of the Business Account was to facilitate the theft of tax refunds. Defendant testified that she maintained the Business Account for business purposes, and the evidence demonstrated that Defendant had deposited numerous tax refunds into the Business Account, although Defendant's tax returns gave no indication that she operated a legitimate business.[7] The government also elicited evidence that Defendant had used the Business Account to pay personal expenses.[8] In addition, while Defendant had numerous refunds deposited into the Business Account, there was

---

[4] Gov't. Exhs. 7-1; 7-3 (confirming payment processing); see Doc. No. 36 at 1 (stipulation of the parties that T.D. Bank account number ending 9776 was opened by Defendant).

[5] Tr. 12/3/14 at 53, 60.

[6] Tr. 12/4/14 at 191-93.

[7] Tr. 12/5/14 at 150-53; see also Gov't. Exhs. 1-1, 2-1, 3-1.

[8] Tr. 12/5/14 at 152-53.

no evidence that Defendant maintained any system to track whose money was flowing into the Business Account so that it could be returned to its rightful owner.

Defendant chose to take the witness stand and testified that Ms. Blackwell had asked her to prepare the 2008 return and had agreed to the deposit of the refund into the Business Account.[9] Defendant also testified that she delivered the $3,524 in cash to Ms. Blackwell and produced a withdrawal ticket from T.D. Bank for that amount in cash.[10]

Pursuant to Rule 29, "the court must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."[11] In ruling on a Rule 29 motion, the court "review[s] the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence."[12] The court's review may not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury" and therefore the entry of a judgment of acquittal is reserved for "cases where the prosecution's failure is clear."[13]

Whether Ms. Blackwell authorized the deposit of the tax refund into Defendant's Business Account and received the refund in cash, as Defendant testified, was a question of fact for the jury. The jury was entitled to credit Ms. Blackwell's testimony that she was unaware of the Business Account and never received any of the refund rather than Defendant's testimony if they did not find the Defendant to be a credible witness. Although Mr. Blackwell and his mother

---

[9] Tr. 12/5/14 at 38-43.

[10] Tr. 12/5/14 at 41-43 (discussing Def. Exh. 3).

[11] Fed. R. Crim. P. 29(a).

[12] *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotations omitted).

[13] *Id.* (internal quotations omitted).

provided partially contradictory testimony as to Defendant's authorization to file the return, Mr.

Blackwell did not testify that his mother authorized the deposit of the refund into the Business

Account or that she received the refund in cash. The withdrawal ticket, while providing some

corroboration for Defendant's testimony, does not establish that Ms. Blackwell received the

money and the jury was not required to believe Defendant's testimony on this issue. Combined

with the circumstantial evidence that the purpose of the Business Account was to facilitate the

theft of tax returns, Ms. Blackwell's testimony was therefore sufficient for the jury to convict

Defendant of conversion of government property as charged in Count Eight of the Indictment.

> Defendant also makes the following claim, which is reproduced in full below:

> Moreover, once the funds from Ericka Blackwell's 2008 return were lawfully deposited into Mr. Pratt's [*sic*] business account, said funds were no longer 'property belong[ing] to the United States:'
>> Where the government no longer has supervision and control over funds or the ultimate use of the funds, and no longer has any *pecuniary* interest in the funds, it would grossly distort the English language to call those funds 'money … of the United States.' In addition, the rule of lenity requires that any ambiguities in the criminal law be resolved in favor of the accused. Accordingly, we conclude that funds are 'money … of the United States' within the meaning of 18 U.S.C. § 641 only where the government retains a pecuniary interest in the funds, or maintains control over the funds or their ultimate use.'
> See e.g. United States v. Howard, 787 F. Supp. 769, 711 (S.D. Ohio) (federal funds properly deposited into the form [*sic*] of social security benefits no longer money of the United States). See Hayle v. United States, 815 F.2d 879, 882 (2d Cir. 1987) (Federal grant money remains "money of the United States within meaning of federal embezzlement statute even after being deposited in bank account of grantee, as government continues to exercise control over its use).[14]

Although unclear, it appears that Defendant's clam attempts two arguments: 1) the evidence

demonstrated that Defendant was authorized to deposit the refund into her account and therefore

Defendant did not convert it; and 2) even if Defendant subsequently converted the refund, the

---

[14] Def. Mot. (Doc. No. 47) at 5-6.

refund ceased to be property of the United States upon deposit into the Business Account because the government no longer exercised supervision and control over the funds.

Both arguments are without merit. Whether to believe Ms. Blackwell's testimony that she was unfamiliar with the Business Account and never received any of the refund was a question of fact for the jury. The evidence was therefore sufficient for the jury to conclude that the return was fraudulently deposited into the Business Account as part of a scheme to convert it.

In the cases relied upon by Defendant, *Hayle v. United States* and *United States v. Howard*, government funds were deposited into the bank account of the intended recipient and then subsequently converted by the defendant.[15] Under those circumstances, the United States retained no pecuniary interest in the funds and could not be said to suffer any injury unless the United States retained some supervision or control over the funds. In this case, however, the evidence was sufficient to support the conclusion that Defendant's act of conversion prevented the funds from ever reaching their intended recipient, Ms. Blackwell. The United States' pecuniary interest in the refund therefore was never extinguished; indeed, the United States suffered the loss of the refund amount to Defendant's theft and remained obligated to pay the refund amount to Ms. Blackwell. Under these circumstances, whether the United States could have exercised supervision and control over the funds if they had ever reached Ms. Blackwell is irrelevant. In reaching this conclusion, the Court benefits from the guidance of the Eleventh Circuit's 1993 decision in *United States v. McRee* holding that the supervision and control test

---

[15] *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (federal grant deposited into bank account of health center and subsequently converted by defendant); *United States v. Howard*, 787 F.Supp. 769, 770 (S.D. Ohio 1992) (social security benefits properly deposited into bank account of defendant's mother and subsequently converted by defendant).

did not apply to erroneously issued tax refunds.[16] For these reasons, Defendant's motion for a judgment of acquittal on Count Eight will be denied.

### III.  MOTION FOR A NEW TRIAL ON COUNTS TWO THROUGH SEVEN

Defendant contends that the convictions on Counts Two through Seven are against the weight of the evidence and a new trial should therefore be granted. Pursuant to Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." When the defendant contends that the jury's verdict is contrary to the weight of the evidence, motions for a new trial should be "granted sparingly and only in exceptional cases."[17] The court must therefore be satisfied that "there is a serious danger that a miscarriage of justice has occurred— that is, that an innocent person has been convicted" before granting such motions.[18] However, "[u]nlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the government, but instead exercises its own discretion in assessing the Government's case."[19]

> A.  *Count Two: Filing A Materially False Income Tax Return for Tax Year 2008*

Count Two of the Indictment charged that Defendant filed a materially false tax return in her own name for tax year 2008 in violation of 26 U.S.C. § 7206(1) by failing to report money that she stole from the tax refund and stimulus checks of those for whom she prepared tax returns for tax year 2007 as part of her adjusted gross income. In order to prove the filing of a materially false tax return in violation of 26 U.S.C. § 7206(1), the government was required to show:

---

[16] *See United States v. McRee*, 7 F.3d 976, 979-80 (11th Cir. 1993).

[17] *United States v. Brennan*, 326 F.3d 176, 189 (3d Cir. 2003) (internal quotations omitted).

[18] *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (internal quotation omitted).

[19] *Id.*

1. [Defendant] made and subscribed a return which was false as to a material matter;
2. The return contained a written declaration that it was made under the penalties of perjury;
3. [Defendant] did not believe the return, statement, or other document to be true and correct as to every material matter; and
4. [Defendant] falsely subscribed the return willfully, with the specific intent to violate the law.[20]

Only the first element is at issue. A false statement is material when it "has the potential for hindering the IRS's efforts to monitor and verify the tax liability" of the accused,[21] and an understatement of adjusted gross income may constitute such a material misstatement.[22] Defendant did not report any income from preparing tax returns on her 2008 return,[23] and the only lawful reason to exclude any of the allegedly stolen funds from the calculation of adjusted gross income was Defendant's contention that certain funds retained from Ms. Singleton's refund were for the repayment of a debt.[24] Thus, the primary issue is whether the government has proven that Defendant had additional income derived from the tax returns and stimulus checks of those for whom she prepared tax returns.

At trial, the government introduced evidence that Defendant had stolen the refunds and stimulus checks of numerous individuals for whom she prepared tax returns for tax year 2007, including Brian Hamilton, Stanley Trader, and Stacey Singleton, and failed to report any of the stolen funds as adjusted gross income on her own 2008 tax return. Leroy Hamilton testified that

---

[20] *United States v. Gollapudi*, 947 F. Supp. 768, 775-76 (D.N.J. 1996) (citing *United States v. Bishop*, 412 U.S. 346, 350 (1973)).

[21] *United States v. Peters*, 153 F.3d 445, 461 (7th Cir. 1998) (quoting *United States v. Greenberg*, 735 F.2d 29, 32 (2d Cir. 1984)).

[22] *United States v. Whyte*, 699 F.2d 375, 379 (7th Cir. 1983).

[23] *See* Gov't. Exh. 2-1.

[24] *See* 26 U.S.C. § 101 *et seq.* (West 2008 ed.) (listing lawful exceptions to reporting of gross income).

he asked Defendant to prepare tax returns for his son Brian Hamilton, who was incarcerated at all relevant times.[25] The government offered Brian Hamilton's 2007 tax return into evidence, which requested that a $958 refund be deposited into the Business Account, as well as IRS records showing that the refund was deposited into the Business Account on June 16, 2008.[26] The parties stipulated that Defendant subsequently deposited $191.05 into Brian Hamilton's inmate prison account and Brian Hamilton testified that he did not receive any further money from Defendant.[27]

Mr. Trader's 2007 tax return requested a refund of $4,398 be deposited into the Business Account and on direct examination, Mr. Trader testified that he received only $1,584 from Defendant.[28] On cross-examination, however, Mr. Trader testified that on May 3, 2011, he had told government agents that Defendant had given him the full $4,398, although Mr. Trader also testified that he was confused when he spoke to the agents.[29]

Ms. Singleton's 2007 return requested a refund of $5,960, with $5,100 to be deposited into Ms. Singleton's bank account, and $860 to be deposited into the Business Account.[30] Ms. Singleton testified that Defendant prepared her 2007 return and that she did not recognize the Business Account.[31] Ms. Singleton also testified that she owed Defendant money in 2007 and 2008 as a result of Defendant making arrangements for her son to visit Disney World, and that

---

[25] Tr. 12/3/14 at 27.

[26] Gov't. Exhs. 4-1, 4-3.

[27] Doc. No. 36 at 2; Tr. 12/4/14 at 69.

[28] Gov't. Exh. 13-1; Tr. 12/4/14 at 168-70.

[29] Tr. 12/4/14 at 178-79.

[30] Gov't. Exh. 9-1.

[31] Tr. 12/4/14 at 27, 29.

she repaid Defendant at some point, although Ms. Singleton could not recall if she had agreed to pay that debt out of her tax refund.[32] Defendant testified that Ms. Singleton had agreed to the repayment of the debt out of the tax refund.[33] Defendant also testified that she kept an unspecified portion of the $860 as repayment of the debt, and gave the remainder to Ericka Blackwell as payment for childcare services provided to Ms. Singleton.[34]

Although Defendant contends that no reasonable jury could have found that she "failed to report income when much of the alleged stolen income was monies returned to the rightful tax filers," specifically the refunds of Stanley Trader and Stacey Singleton, it was reasonable for the jury to conclude that Defendant had at least $766.95 in unreported income in 2008 on account of Brian Hamilton's tax refund.[35] The evidence established Brian Hamilton's $958 tax refund was deposited into the Business Account in 2008, and Brian Hamilton's testimony that he received only $191.05 of that refund permitted a reasonable inference that Defendant kept the remaining $766.95. Regardless of whether the jury found Mr. Trader to be credible or whether Ms. Singleton's testimony was sufficient to establish that Defendant realized any income from her return, the evidence that Defendant retained $766.95 of Brian Hamilton's refund and failed to report any of the $766.95 as adjusted gross income on her 2008 tax return is sufficient to support the jury's verdict on Count Two.

B. *Count Three: Filing a Materially False Tax Return for Tax Year 2009*

Count Three of the Indictment charged that Defendant filed a materially false tax return in her own name for tax year 2009 in violation of 26 U.S.C. § 7206(1) by failing to report money

---

[32] Tr. 12/4/14 at 50-52.

[33] Tr. 12/5/14 at 66, 68-69.

[34] Tr. 12/5/14 at 72.

[35] Def. Mot. at 7.

she stole from the refund and stimulus checks of those for whom she prepared tax returns as part of her adjusted gross income. The primary legal issue on Count Three is also whether Defendant in fact retained any money derived from the refunds and stimulus checks of those for whom she prepared tax returns.

At trial, the government presented evidence that Defendant stole money from numerous individuals for whom she prepared returns for tax year 2008, including Maurice Blackwell, Ericka Blackwell, Stanley Trader, and Stacey Singleton, and failed to report any of the stolen funds as adjusted gross income on her own 2009 tax return. Mr. Blackwell's 2008 tax return requested that $1,742 be deposited into the Business Account and IRS records established that the refund was paid on March 9, 2009.[36] Mr. Blackwell testified that Defendant prepared his 2008 return and that he received only $1,000 of the refund.[37] As discussed in Section II, Ms. Blackwell testified that she did not authorize Defendant to deposit her $3,524 refund into the business account and never received any of the refund,[38] and IRS records also established that the refund was deposited into the Business Account on February 27, 2009.[39]

Mr. Trader's tax return for 2009 requested a $4,821 refund and IRS records establish that the $4,821 refund was deposited into the Business Account on February 10, 2009.[40] Mr. Trader's bank records reveal that Mr. Trader deposited $4,321 ($500 less than the refund amount) in cash one week later, on February 17, 2009.[41] Although Mr. Trader was unable to recall the events

---

[36] Gov't Exhs. 8-1, 8-3.

[37] Tr. 12/4/14 at 189-90.

[38] Tr. 12/3/14 at 53, 60.

[39] Gov't. Exh. 7-3.

[40] Gov't. Exh. 14-1, 14-3.

[41] Gov't. Exh. 14-4.

surrounding the preparation of his 2008 return, he stated on cross-examination that he had also told government agents that Defendant provided him with his full refund for 2008, although Mr. Trader also testified that he was confused when he spoke to the agents.[42]

Ms. Singleton's 2008 tax returns requested a $4,178 refund and IRS records establish that $648 of that refund was paid into the Business Account.[43] Ms. Singleton testified that she owed her debt to Defendant in 2007 and 2008, and was unable to recall whether she had agreed to the repayment of her debt out of either tax refund.[44]

Defendant testified that she delivered Maurice and Ericka Blackwell's full refunds in cash.[45] Defendant also testified that pursuant to an agreement with Ms. Singleton, Defendant kept a small portion of the $648 deposited into the Business Account as reimbursement for costs accrued in the preparation of the return, and provided the remainder to Ms. Blackwell as payment for childcare services provided to Ms. Singleton.[46]

It was reasonable for the jury to conclude that in 2009 Defendant had $742 in unreported income derived from Mr. Blackwell's tax refund and $3,524 in unreported income derived from Ms. Blackwell's tax refund. The evidence demonstrated that $1,742 was deposited into the Business Account in 2009, and the jury was entitled to credit Mr. Blackwell's testimony that he only received $1,000 of the refund rather than Defendant's testimony that she returned the entire refund to Mr. Blackwell if the jury found that Defendant was not a credible witness. The evidence also established that Ms. Blackwell's refund was deposited into the Business Account

---

[42] Tr. 12/4/14 at 172, 178-179.

[43] Gov't Exh. 10-1, 10-2.

[44] Tr. 12/4/14 at 29, 51-52.

[45] Tr. 12/5/14 at 38-39.

[46] Tr. 12/5/14 at 76.

in 2009, and for the reasons stated in Section II, the evidence was sufficient for the jury to conclude that Defendant converted Ms. Blackwell's refund. Regardless of Mr. Trader's somewhat confused testimony and whether Ms. Singleton's testimony was sufficient to establish that Defendant kept any of the money deposited into the Business Account, the jury's verdict was not against the weight of the evidence due to the evidence that Defendant derived in excess of $4,000 from the refunds of Mr. Blackwell and his mother, and failed to report any of this money as adjusted gross income on her own 2009 tax return.

### C. Count Four: Aiding and Abetting Stacey Singleton in the Preparation and Filing of Materially False Income Tax Returns for Tax Year 2007

Count Four of the Indictment charged that Defendant aided and abetted Ms. Singleton in preparing a return for tax year 2007 that claimed materially false child care expenses. In order to prove that Defendant Pratt aided and abetted in the preparation of materially false income tax returns in violation of 26 U.S.C. § 7206(2), the government was required to show:

1. That [D]efendant aided or assisted, procured, counseled, or advised the preparation or presentation of a return;
2. That the return was fraudulent or false as to a material matter; and
3. That the act of the [D]efendant was willful.[47]

Only elements two and three are in dispute. In order to act willfully, the defendant must engage in the "voluntary, intentional violation of a known legal duty."[48]

At trial, the government introduced evidence that Defendant willfully included $3,900 in false childcare expenses supposedly paid to Ericka Blackwell as a deduction on Ms. Singleton's 2007 return. The childcare services were listed as having been provided at Defendant's home

---

[47] *United States v. Gambone*, 314 F.3d 163, 174 (3d Cir. 2003).

[48] *Bishop*, 412 U.S. at 360.

14

address.[49] The return also established that $860 of Ms. Singleton's refund was to be deposited into the Business Account and IRS records demonstrate that the $860 was deposited on March 31, 2008.[50]

Ms. Singleton testified that Defendant prepared her 2007 return.[51] Ms. Singleton also testified that she had paid Ms. Blackwell to provide childcare services for her niece, and although Ms. Singleton could not recall exactly how much she paid Ms. Blackwell, she "did not pay [Ms. Blackwell] a lot."[52] Although Ms. Singleton testified on direct examination that she did not tell Defendant about the money that she paid to Ms. Blackwell, on cross-examination Ms. Singleton stated that she was unable to recall whether she had discussed the payments to Ms. Blackwell with Defendant.[53] Ms. Singleton also testified that she was unaware that the childcare expenses had been claimed on her return, and that she did not look at the return before it was filed.[54] And as discussed above, Ms. Singleton acknowledged that she owed Defendant money in 2007 and 2008, but could not recall whether that debt was repaid out of her refund.[55] Ms. Blackwell, for her part, testified that Ms. Singleton had never paid her for childcare services.[56]

---

[49] Gov't. Exh. 9-1.

[50] *Id.*

[51] Tr. 12/4/14 at 27:11-13.

[52] Tr. 12/4/14 at 33:7-17.

[53] Tr. 12/4/14 at 53.

[54] Tr. 12/4/14 at 34.

[55] Tr. 12/4/14 at 29, 51-2.

[56] Tr. 12/3/14 at 61.

Defendant testified that she relied upon information verbally provided by Ms. Singleton in preparing the 2007 return and did not require Ms. Singleton to provide any documents.[57] Defendant also produced an envelope which she identified as her notes of Ms. Singleton's statements.[58]

Although Ms. Singleton's testimony was equivocal and contained numerous failures of recollection, Defendant chose to take the witness stand, and as a result, the jury was entitled to find her not to be a credible witness. Based upon Ms. Singleton's statement that she did not pay Ms. Blackwell a lot and Ms. Blackwell's statement that Ms. Singleton did not pay her anything, the jury could infer that Ms. Singleton did not tell Defendant that she had paid Ms. Blackwell the sum of $3,900. The listing of Defendant's address, rather than Ms. Blackwell's, also allowed the jury to infer that the childcare expenses were added or altered by Defendant. In addition, the jury could infer that Defendant had a financial motive to inflate Ms. Singleton's refund as $860 was deposited into the Business Account and Ms. Singleton acknowledged owing a debt to Defendant. Although there was no evidence that Defendant prepared tax returns as part of her professional duties at the IRS, it was also reasonable for the jury to infer that she knew of her legal duty not to claim a false childcare deduction on Ms. Singleton's tax return. Thus, the conviction on Count Four was not against the weight of the evidence.

D. *Count Five: Aiding and Abetting Stacey Singleton in the Preparation and Filing of Materially False Income Tax Returns for Tax Year 2008*

Count Five of the Indictment charges that Defendant aided and abetted Stacey Singleton in the preparation and filing of a materially false income tax return for tax year 2008. Ms. Singleton's 2008 tax return demonstrated that $2,700 in childcare expenses paid to Ms.

---

[57] Tr. 12/5/14 at 135.

[58] Tr. 12/5/14 at 69-70 (discussing Def. Exh. 18).

Blackwell were claimed as the government alleged.[59] The 2008 return also requested that $648 of the refund be deposited into the Business Account.[60]

Ms. Singleton testified that Defendant had prepared her 2008 return and unequivocally stated that she had not paid Ms. Blackwell $2,700 in childcare expenses in 2008.[61] With the exception of whether she had paid money to Ms. Blackwell, all of Ms. Singleton's equivocations and failures of recollection apply to the 2008 return as well as the 2007 return. Ms. Blackwell's testimony that Ms. Singleton had never paid her for childcare services is also applicable to the 2008 return.[62]

Defendant testified that she had relied upon verbal statements by Ms. Singleton in preparing the 2008 return as well and presented a document that she identified as her notes on Ms. Singleton's tax information for 2008.[63] Defendant also testified that pursuant to an agreement with Ms. Singleton, she kept a small amount of the $648 as reimbursement for expenses incurred in preparing the return, and gave the remainder to Ms. Blackwell as payment for childcare services provided to Ms. Singleton.[64]

The evidence was sufficient for the jury to conclude that Defendant aided and abetted in the preparation and filing of Ms. Singleton's materially false 2008 return. Because Defendant chose to testify, the jury was entitled to find that she was not a credible witness and disbelieve her testimony. Based upon Ms. Singleton's unequivocal denial that she had paid Ms. Blackwell

---

[59] Gov't. Exh. 10-1.

[60] *Id.*

[61] Tr. 12/4/15 at 36.

[62] Tr. 12/3/14 at 61.

[63] Tr. 12/5/15 at 77-78 (discussing Def. Exh. 22).

[64] Tr. 12/5/15 at 76.

$2,700 in childcare expenses in 2008, combined with Ms. Blackwell's testimony that Ms.

Singleton had never paid her any money, the jury could infer that Ms. Singleton did not tell

Defendant that she had paid $2,700 to Ms. Blackwell for childcare. If the jury did not believe

Defendant's testimony that she gave the $648 deposited into the Business Account to Ms.

Blackwell, the deposit of the money into the Business Account allowed the jury to infer that

Defendant had an incentive to inflate Ms. Singleton's refund in order to obtain repayment of the

debt. And although there was no evidence that Defendant prepared tax returns as part of her

professional duties at the IRS, it was reasonable for the jury to infer that she was aware of her

legal duty not to falsely report deductions on Ms. Singleton's return. The conviction on Count

Five therefore was not against the weight of the evidence.

> E. *Counts Six and Seven: Aiding and Abetting Maurice Blackwell and Marquice Pratt in the Preparation and Filing of Materially False Tax Returns for Tax Year 2008*

Counts Six and Seven of the Indictment charges that Defendant aided and abetted

Maurice Blackwell, as well as Defendant's son Marquice Pratt, in the preparation and filing of

materially false tax returns for tax year 2008. At trial, the government presented evidence that

Defendant willfully included false business expenses from a dry cleaning business that Mr.

Blackwell did not own, and willfully included two dependents, Jafir Parker and Jahid Thomas,

who were not in fact supported by Mr. Pratt, on their respective returns. The 2008 returns of Mr.

Blackwell and Mr. Pratt established that the dry cleaning business expenses and two dependents

were claimed as the government alleged.[65] Maurice Blackwell testified that Defendant prepared

his 2008 return and that he did not own the dry cleaning business listed on his return.[66] Although

---

[65] Gov't. Exhs. 8-1, 11-1.

[66] Tr. 12/4/14 at 186, 188.

Mr. Pratt was unable to recall who had prepared his 2008 return,[67] IRS records established that his 2008 refund was deposited into the Business Account.[68] Mr. Pratt was also unable to recall whether he knew his listed dependents, Jafir Parker and Jahid Thomas.[69]

In her testimony, Defendant did not explain how the dry cleaning business expenses came to be claimed on Mr. Blackwell's return or why Jafir Parker and Jahid Thomas were claimed as dependents on her son's return. Defendant now contends that the jury's verdict is against the weight of the evidence due to "credibility issues with the government's witnesses" and "evidentiary weaknesses and inconsistencies," but does not explain this contention.[70]

The jury could infer from Mr. Blackwell's testimony that he did not own the dry cleaning business that he had not told Defendant that he had incurred expenses in that business. Given that Mr. Pratt is Defendant's son and that his testimony is patently incredible, the jury could infer that Defendant was aware that Jafir Parker and Jahid Thomas were not his dependents. The convictions on Counts Six and Seven were not therefore against the weight of the evidence.

## IV. CONCLUSION

For these reasons, the Rule 29 motion for a judgment of acquittal on Count Eight and the Rule 33 motion for a new trial on Counts Two through Seven will be denied. An appropriate order follows.

---

[67] Tr. 12/4/14 at 201.

[68] Gov't. Exh. 11-3.

[69] Tr. 12/4/14 at 196.

[70] Def. Mot. at 11.